## WILLIAM WINGERT v. N. STONE ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
OF CLEARFIELD COUNTY.

Argued April 20, 1891—Decided May 4, 1891.

(*a*) One who had acquired an equitable estate in land, by articles of agreement and the payment of part of the purchase-money and possesssion taken, had a dwelling erected thereon, and subsequently, without a reconveyance, " threw up " the contract with the vendor.

(*b*) Afterward, the wife of the vendee procured from the vendor an agreement for the sale of the lot to her, upon which agreement she made certain payments of purchase money, and was allowed a credit for what had previously been paid by her husband :

1. In such case, the lien of a mechanics' claim, for work done and materials furnished in the erection of the dwelling, was not divested. The husband could not convey his title directly to his wife so as to defeat the lien ; much less could he do so indirectly.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 66 January Term 1891, Sup. Ct. ; court below, No. 233 February Term 1890, C. P.

Charge of Court below.

On January 13, 1890, William Wingert issued a scire facias sur a mechanics' lien filed against Nicholas Stone, owner or reputed owner, " with notice to Catharine Stone, terre-tenant." Issue.

At the trial on September 16, 1890, a case was shown sufficiently appearing in the charge to the jury, KREBS, P. J.:

The plaintiff, William Wingert, in this case seeks to revive, or continue as a lien, an alleged mechanics' claim which he held against a property in the borough of DuBois, and which is entered against Nicholas Stone. He alleges that the title of that property at the time he furnished the material, and since that time, is still in Nicholas Stone. In order to bind the property of a married woman on a mechanics' lien, where the property really does belong to a married woman, the lien must, upon its face, set forth the ownership of the property in the woman, and that the contract was made by her for its improvement. But, in this case, it is alleged that the property really belongs to Nicholas Stone.

The facts are not much in dispute. It is admitted on the part of the defendant that about the first of June, 1885, a contract in writing was made between Henry S. Knarr, the owner of some real estate in the borough of DuBois, and Nicholas Stone, by which Knarr agreed to sell a lot of ground (we presume it was an ordinary town lot) for some two hundred dollars, and the payments were to be five dollars a month until paid; that Nicholas Stone paid five dollars on the day that contract was made; that in July, about the fourth of July, he paid four dollars; that in August he again paid five dollars, and in October five dollars, making in all nineteen dollars; that nothing more was paid, and that nothing more was done in reference to that property, as far as Mr. Knarr was concerned, from whom the purchase was originally made, until December 16, 1885; that then this original contract was given up, surrendered, and a new contract was made with Mrs. Stone, on which she received credit for the nineteen dollars that had been previously paid on the contract with her husband, and twenty-five dollars more that were paid, as I understand the testimony, by Nicholas Stone; he claims that he paid this twenty-five dollars for her.

Now, Mr. Wingert, the claimant here, testifies, and he is not contradicted in any particular on that subject, that before he furnished this material he went to Mr. Knarr, I believe, and inquired if he had sold a property to Mr. Stone, and he was informed by Mr. Knarr that he had made a contract with Mr. Stone, and that after doing that he went on and delivered the material which is claimed for in this case. There is no evidence here that this material did not go into this building. There is no allegation that any material claimed for here was not delivered, and therefore the jury is bound to believe that the material claimed for was delivered and put into the building. Whether or not, under the facts and the law, Mr. Wingert is entitled to recover on this mechanics' lien against this property, is largely, if not entirely, a question for the court.

Now, having shown that this property was originally purchased, by contract in writing, from Mr. Knarr, I am of the opinion that the burden of proof rests upon the defendant, Mrs. Stone, as she is the person who takes defence, to show under the law and evidence applicable to married women, that this property did belong to her, and was purchased by her with her own funds, before Mr. Wingert could be deprived of the right to recover upon this mechanics' lien.

On this question, Mrs. Stone alleges that her father had given her title to some real estate in DuBois. She claims in her testimony, and so did her husband, that her father had given her title to a piece of ground, and that afterwards she sold that ground to Mr. Prothero, and invested the money in a farm up in New York state; that subsequently she sold that property, and out of it there was some four hundred and fifty dollars coming to her after all debts were paid; that he (Nicholas Stone) had this money; that he had never given her a note, or anything else in writing, to show that it was her money, and that out of that money, she claimed he had paid on account of this property the twenty-five dollars for her.

Now, gentlemen of the jury, after that evidence was thus produced I permitted the plaintiff to show, in rebuttal of it, that, instead of Mr. Shaffer, the father of Mrs. Stone, having given his daughter the property then in Brady township, but now in DuBois borough, he had conveyed to Nicholas Stone, the husband of Catharine Stone, the very property which was

Charge of Court below.

subsequently conveyed by them to Mr. Prothero, the same person that she alleges she sold the property to that her father had given her.

Now, gentlemen of the jury, in addition to that there comes another question, which is materially a question of law, and that is, that, after she got this contract in her name in the manner stated, she went to the building and loan association and borrowed money on this property. She admits that at that time she had no other estate left, none whatever; so that that money was borrowed on the credit of this particular property against which the lien was entered. Under these facts and the law, as we understand it, the title of Mrs. Stone to this property is not sufficient to defeat the lien of Mr. Wingert. [While it is true that where a lien is entered against the owner of an equitable estate, and the equitable estate by proceedings at law is divested and either destroyed or merged in the legal estate, the lien falls with the equity; but here, the attempt is to vest the equity of Nicholas Stone, vesting in him under the written contract with Mr. Knarr, in Mrs. Stone free of the lien. The contract could not be surrendered by the voluntary act of Stone, and through Knarr become re-vested in Mrs. Stone, and thus deprive Mr. Wingert of his lien for materials, and give the materials and all to Mrs. Stone without paying a dollar therefor. We deem it our duty to say as a matter of law, under the facts on this branch of the case, that your verdict must be for the plaintiff.] [2]

So, too, under the facts and the law as to her title which she attempts to sustain by evidence of a separate estate. While she and her husband do testify to some facts tending to prove that she had a separate estate, this testimony is flatly contradicted by the solemn deeds of the parties, and there is nothing left of it which the jury could believe, because the very conveyance she invokes as showing a separate estate in her shows she had no separate estate. In our opinion, she has no title to this real estate which can avail to defeat Mr. Wingert's lien and right to recover thereon; [and we say to you, gentlemen of the jury, that it is your duty to render a verdict in this issue in favor of the plaintiff for the amount claimed, to wit: the sum of $71.58.] [3]

—The jury returned a verdict for the plaintiff for $71.58.

Opinion of the Court.

Judgment having been entered, the defendants took this appeal, specifying that the court erred:

2, 3. In the portions of the charge embraced in [  ] [2] [3]

*Mr. A. S. Cole* (with him *Mr. M. L. McQuown*), for the appellants.

Counsel cited: Holden v. Winslow, 19 Pa. 449; Kelly v. McGehee, 137 Pa. 443; Sellers v. Benner, 94 Pa. 207; Myers v. Hunt, 10 W. 104; Campbell's App., 36 Pa. 247.

*Mr. W. C. Pentz*, for the appellee, was not heard.

In the brief filed, counsel cited: Stahle v. Spohn, 8 S. & R. 317; Forrester v. Hanaway, 82 Pa. 218; Adams v. Bleakley, 117 Pa. 283; Bradford's App., 29 Pa. 513; Topley v. Topley, 31 Pa. 328; Walker v. Reamy, 36 Pa. 410.

PER CURIAM:

This was a scire facias upon a mechanics' lien. At the time the work was done and the materials furnished for the erection of the house in controversy, the equitable title was in Nicholas Stone, the defendant, under articles of agreement. He had paid a portion of the purchase money. After the house was erected, Stone became dissatisfied with his purchase, and surrendered the article of agreement to Mr. Knarr, his vendor; or in his own words, "threw it up," and refused to pay any more money under it. Some time after this, Mrs. Stone, his wife, went to Mr. Knarr, and procured from him an agreement for the sale of the lot to her, upon which agreement she made some payments of the purchase money, and was also allowed a credit for what had previously been paid by her husband. Her contention is that the lien did not attach to her interest in the property.

This may be appropriately termed a new way to get a house without paying for it. If we concede that a lien filed against an equitable estate falls with the destruction of said estate, either by a judicial proceeding, or by a merger of the equitable and legal titles, yet the law will not recognize such a summary mode of getting rid of the equitable title. The title to real estate cannot be tossed about from hand to hand like a base-ball. Stone could not have conveyed his equitable title to his wife,

so as to defeat the mechanics' lien which had already fastened upon the property. Much less could he do so by merely throwing up the agreement without a reconveyance to Mr. Knarr. It was a clumsy device, which the law does not favor.

Judgment affirmed.