Argued October 11; affirmed December 12, 1939; rehearing denied
February 14, 1940

# GABRIEL POWDER & SUPPLY CO. *v.*
# THOMPSON ET AL.

(97 P. (2d) 182)

Department 2.

*William H. Trindle*, of Salem, for appellant.
*W. C. Winslow*, of Salem, for respondent.

BELT, J.   This suit was commenced for the purpose of establishing and foreclosing an alleged material-man's lien on certain real property owned by the defendant Audrey Ewing. From a decree directing foreclosure of the lien, the above-named defendant appeals.

On February 20, 1937, Audrey Ewing entered into a contract to sell to Alice Lynch a house and lot in the city of Salem, Oregon, for the sum of $3,500. $1,000 was paid upon execution of the contract, the balance of the purchase price to be paid in monthly instalments. Alice Lynch immediately went into possession of the premises, under this executory contract of sale, and began the alteration and repair of the old house, with

the idea of converting it into an apartment house. It appears that the defendant J. C. Thompson had charge of the construction work for and on behalf of his intended wife, Alice Lynch. Although Thompson's name was not mentioned in the contract of purchase, it was he who made the down payment of $1,000. It was Thompson, acting no doubt as agent for the defendant Alice Lynch, who ordered the labor performed and materials furnished. The labor and materials were charged on the books to Thompson. There is no evidence that the defendant Ewing, the owner in fee, had anything whatever to do with the alteration or repair of the house, nor did she have any dealing with the lien claimant. There was nothing in the contract of sale obligating the purchaser to make any repair or alteration of the house.

Alice Lynch defaulted in her payments under the executory contract of sale and a suit was brought by the vendor, resulting in a decree rendered on October 29, 1937, foreclosing and barring any right, title, or interest of the vendee in the premises. The plaintiff lien claimant was made a party defendant in this suit, but no decree was taken purporting to adjudicate its interests.

The first delivery of materials furnished by the Gabriel Powder and Supply Company was made on March 16, 1937, and the last delivery on the 19th day of the same month. On March 20, 1937, this lien claimant, in compliance with section 51-101, Oregon Code 1930, mailed notice to the owner in fee, Audrey Ewing, that a lien might be claimed against the property for the materials thus furnished. On the day following receipt of this notice, to-wit, March 21, 1937, Audrey Ewing, through her agent and brother, T. M. Hicks,

telephoned Gabriel Powder and Supply Company that she would not be responsible for any materials thus furnished. She also asserts that on the same day notice of non-responsibility was posted on the house in question. Thereupon the plaintiff ceased to furnish further materials.

There is no dispute concerning the time the materials were furnished by this lien claimant, the value thereof, nor the use of the same in the alteration or repair of the house. Neither does such plaintiff seriously question the posting of the non-responsibility notice.

While Gabriel Powder and Supply Company practically concedes the posting of the non-responsibility notice, this plaintiff insists, however, that the notice was not posted within three days after the owner in fee obtained "knowledge of the construction, alteration or repair" as required by section 51-104, Oregon Code 1930. It is further contended by this plaintiff that, assuming the notice was so posted, the lien has been established. In other words, such plaintiff asserts that, where both the lien claimant and the owner comply with the statute, a lien should be established for materials furnished prior to date of posting non-responsibility notice. Of course, if the owner, Audrey Ewing failed to comply with the statute relative to the time of posting notice, it is unnecessary to consider the second question.

■■ As before stated, there is no evidence tending to show that the owner in fee of the real property upon which the lien is sought ever authorized the vendee or her agent to purchase the materials or to make the im-

provements in question. The mere fact that the vendee was in possession under an executory contract of sale did not make her the agent of the owner so that her requests for labor or material became the liability of the vendor: *Williams v. Sharpe*, 125 Or. 379, 265 P. 793; *Dyer v. Thrift*, 124 Or. 249, 264 P. 428; *Schram v. Manary*, 123 Or. 354, 260 P. 214, 262 P. 263; *Alaska Plumbing Co. v. Bingham*, 58 Or. 506, 115 P. 159. The principle has often been announced by this court that to support a lien there must be some contractual relation, either directly or indirectly, between the lien claimant and the owner of the realty sought to be charged: *Oregon Lumber & Fuel Co. v. Nolan*, 75 Or. 69, 143 P. 935, 146 P. 474.

This case is distinguished from that of *Oregon L. & F. Co. v. Nolan*, supra, wherein the contract between the lessor and lessee made it incumbent upon the latter to construct a building upon the leased premises, which would become the property of the lessor in the event the option to purchase was not exercised and the lease terminated. In that case Blanchard, the lessee, was the statutory agent of the owner and his liability could not be evaded by posting notice of non-responsibility.

It was incumbent upon the lien claimant, under section 51-101, Oregon Code 1930, not later than five days after the date of the first delivery of material or supplies, to deliver or mail to the owner in fee a notice in writing stating, in substance and effect, that:

"* * * such person, firm or corporation has commenced to deliver material and supplies for use thereon, with the name of the contractor or agent or other person ordering the same, and that a lien may be claimed for all material and supplies furnished by such

person, firm or corporation for use thereon, and no further notice to the owner shall be necessary  \*  \*  \*.''

It is further provided in the above section that:

''No materialmen's lien for material or supplies furnished to the contractor or the agent of any owner or reputed owner shall be enforced unless the above provisions of this act have been complied with  \*  \*  \*.''

 ▆ The notice that a lien might be claimed having been mailed in compliance with the above section of the statute, it remains to be determined whether the owner in fee, whose interests are sought to be charged, posted notice of non-responsibility ''within three days after he shall have obtained knowledge of the construction, alteration, or repair,'' as required by section 51-104, Oregon Code 1930. If no such notice has been posted in the manner and within the time prescribed by statute, a presumption arises that the material was furnished at the instance and request of the owner. The statutory provision as to posting of non-responsibility notice was enacted for the protection of the owner but, unless there has been a substantial compliance therewith, the owner is deemed to have authorized the labor performed or materials furnished.

 ▆ It is true the defendant owner posted notice of non-responsibility within three days after receipt of notice that a lien might be claimed, but that does not answer the requirement of the statute. The vital question is: Did the owner post such notice within three days after having obtained knowledge of the ''construction, alteration, or repair'' of the house? From the answer of the defendant owner we observe that ''immediately following the date of the execution of the said contract with said Alice Lynch this defendant was *informed*

that one J. C. Thompson had begun to make certain alterations and repairs on the dwelling house" described in the complaint. It also appears from the answer that the above-mentioned contract was executed on February 20, 1937. If, as defendant avers, she was *informed immediately* after the execution of the contract that the alterations and repairs had begun, it is obvious that the notice posted on March 21, 1937, was not within the time prescribed by statute. Hence we must presume that the materials were furnished with her consent and that the person ordering the same was acting as her agent. Under the statute, it is not incumbent upon the owner to post a non-responsibility notice after the delivery of the materials or the performance of the work by every lien claimant, but it is sufficient to post such notice after having obtained knowledge of the commencement of the "construction, alteration, or repair" of the building. When such notice is posted within the statutory time, there is no necessity for later posting an additional notice.

██ It is incumbent upon the lien claimant to show knowledge of the "construction, alteration, or repair" on the part of the owner. After knowledge has thus been established, the burden then rests upon the owner to show that the notice was posted within the statutory period. That the posting of the notice of non-responsibility is a defense, see: Bloom on Mechanic's Liens, § 694; *Stravs v. Steckbauer*, 136 Minn. 69, 161 N. W. 259; *Perazzi v. Doe Estate Co.*, 40 Cal. App. 617, 181 P. 398; *Clark Hardware Co. v. Centennial T. Min. Co.*, 22 Colo. App. 174, 123 P. 322; *Fisher v. McPhee & McGinnity Co.*, 24 Colo. App. 420, 135 P. 132.

█ In the instant case the plaintiff lien claimant has shown by the pleading and the evidence that the de-

fendant owner had knowledge of the "construction, alteration, or repair" of the house immediately after the execution of the contract of sale on February 20, 1937, yet no notice of non-responsibility was posted until March 21, 1937. The defendant, having thus failed to comply with the statute in reference to posting of notice, the lien of the plaintiff attaches to her interest in the land.

The decree of the lower court is affirmed and plaintiff is awarded costs and disbursements.

RAND, C. J., and BAILEY and LUSK, JJ., concur.